**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **Judie McNeil,** | ) |
| **Plaintiff,** | ) |
| v. | ) Civil No. 1:14–cv–00886 (APM) |
| **District of Columbia,** | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Plaintiff Judie McNeil, acting on behalf of her minor son, J.M., brought this action alleging that Defendant District of Columbia violated the Individuals with Disabilities Education Act ("IDEA"). At an administrative hearing, a Hearing Officer ruled that Defendant fulfilled its obligations under the Act. Plaintiff now challenges that ruling, asserting that Defendant: (1) failed to design an adequate individualized education program ("IEP") for J.M. for the 2012–2013 school year, (2) failed to provide an adequate placement for J.M. for the 2012–2013 and 2013–2014 school years, and (3) failed to adequately implement J.M.'s 2013 IEP during February and March 2013. Defendant counters that its actions were appropriate under the IDEA and that Plaintiff failed to meet her burden of proof to show a violation.

Before the court are Plaintiff's Motion for Summary Judgment and Defendant's Cross–Motion for Summary Judgment. After considering the parties' submissions and the relevant law, the court finds that the Hearing Officer did not adequately address the first of Plaintiff's three claims at the administrative hearing and, therefore, remands this matter for further consideration.

The court, however, affirms the Hearing Officer's determinations as to her second and third claims. Accordingly, the court denies Plaintiff's Motion for Summary Judgment, grants in part and denies in part Defendant's Cross-Motion for Summary Judgment, and remands the case to the Hearing Officer for further proceedings consistent with this Memorandum Opinion.

## II. BACKGROUND

### A. Factual Background

#### 1. *J.M.'s Early Childhood Education*

Plaintiff's son, J.M., suffers from intellectual, emotional, and behavioral disabilities making it difficult for him to learn with other students his age and participate in a normal classroom setting. *See, e.g.*, Pl.'s Mem. in Supp. of Mot. for Summ. J., ECF No 13 [hereinafter Pl.'s Mot.], at 3; Def.'s Opp'n to Pl.'s Mot. for Summ. J., ECF No. 16 [hereinafter Def.'s Opp'n], at 4–5; Admin. Rec. Pt. 1, ECF No. 10 [hereinafter A.R. Pt. 1], at 7–10.[1] In 2009, when J.M. was only eleven years old, he received a psychological evaluation that found he had an IQ of 78 and determined he was learning disabled. A.R. Pt. 1 at 31–32. As a result, in 2010, the District of Columbia Public Schools ("DCPS") created an individualized education program ("IEP") for J.M., which prescribed 25 hours per week of instruction outside the general education setting—known as "pull-out" instruction—as well as several other accommodations, including small-group instruction and peer tutoring support (the "2010 IEP"). *Id*. at 103.

J.M. attended Options Public Charter School ("Options") for sixth grade, *id*. at 70, where he struggled despite the accommodations set out in the 2010 IEP, regularly getting into fights, disrupting class, and skipping school. *Id*. At some point in 2011, J.M. was incarcerated in a juvenile detention facility and, upon his release, Options would not allow him to return. *Id*. at 104. DCPS

---

[1] All citations to the Administrative Record reference the page numbers in the original document, as divided into Parts 1 and 2, respectively.

then placed him at Browne Education Campus ("Browne") for the remainder of the 2011–2012 school year, where he continued to struggle. *Id*. at 84–86; Def.'s Opp'n at 4.

Following a violent incident resulting in his suspension from school, J.M.'s IEP team reconvened on October 4, 2011, and revised J.M.'s IEP (the "2011 IEP"). A.R. Pt. 1 at 52–67, 104–08. Even though J.M. continued to struggle in school, the 2011 IEP actually *reduced* the amount of individualized support services he received—e.g., replacing the 25 hours per week of pull-out instruction with 10 hours per week of "specialized instruction in the general education setting"—because Browne did not have the resources to fully implement the services prescribed in the 2010 IEP. *Id*. at 104–05.

J.M. underwent a further psychological evaluation in December 2011, which determined that he suffered from a "pervasive history of anger, aggressive and disruptive behaviors, and poor emotional modulation . . . [which] undermine his ability to enhance his cognitive and academic skills." *Id*. at 85–86. The evaluation recommended, among other things, that J.M. receive "individualized instruction or instruction in small group settings . . . [and that he] would benefit from full[-]time special education supports in a therapeutic school." *Id*. at 87.

   2.   *The February 2012 Hearing Officer Determination and IEP*

On December 8, 2011, Plaintiff filed an administrative due process complaint with the DCPS Office of Dispute Resolution, challenging the adequacy of the 2011 IEP, in part based on the findings of J.M.'s 2011 psychological evaluation. *Id*. at 281–310; Def.'s Opp'n at 4. After taking witness testimony and reviewing evidence submitted by both parties, the Hearing Officer issued a determination in favor of Plaintiff and ordered that DCPS further revise the 2011 IEP (the "2012 HOD"). A.R. Pt. 1 at 99–128. In so ruling, the Hearing Officer relied heavily on the findings in J.M.'s 2011 psychological evaluation, concluding that J.M. could not "receive a basic floor of

education opportunity in a general education class with a class size of 15." *Id*. at 124–26. As a result, the Hearing Officer ordered that the 2011 IEP be revised to include:

- A "therapeutic" "educational placement" that provides "small group special education instruction in all academic subjects for the entirety of each academic classroom period during the school day"; and

- "Behavioral support services for one hour per week" and "immediate behavioral support services if [J.M.] threatens others or threatens himself" provided by "counselors that are qualified to provide counseling to school students."

*Id*. at 127.

To implement the Hearing Officer's decision, DCPS convened a meeting on February 22, 2012, to revise the 2011 IEP. Pl.'s Mot. at 4; Def.'s Opp'n at 5. The resulting IEP (the "2012 IEP") provided that, in addition to newly created subject-specific goals, J.M. should receive 10 hours per week of pull-out instruction and one hour per week of behavioral support services. *Id*.; A.R. Pt. 1 at 134–50. The 2012 IEP did not, however, specifically prescribe "therapeutic" services or "at–risk counseling" for J.M., as ordered by the Hearing Officer. *Id*. Rather, it addressed those requirements by setting certain behavioral goals, including that J.M. should both "develop a therapeutic relationship with the service provider in order to positively assert himself in social and academic situations" and "increase his self–control skills . . . to decrease or eliminate his . . . aggressive and disrespectful behaviors." A.R. Pt. 1 at 144–45. At bottom, the 2012 IEP relied primarily on "small–group instruction" within the general education setting, supplemented by part-time pull-out instruction and behavioral counseling services, to accommodate J.M.'s educational and behavioral needs and thus provide him a free appropriate public education ("FAPE") as required under the IDEA.

### 3. *J.M.'s Progress Under the 2012 IEP and the Creation of the 2013 IEP*

After finalizing the 2012 IEP, DCPS assigned J.M. to attend Eliot-Hine Middle School ("Eliot-Hine"). Def.'s Opp'n at 5; A.R. Pt. 1 at 131. However, J.M. again was incarcerated and,

4

upon the end of his confinement, enrolled at Spingarn High School ("Spingarn") in November 2012. Pl.'s Mot. at 4; A.R. Pt. 1 at 151.  On January 31, 2013, J.M.'s IEP team reconvened to both review and, as necessary, revise the 2012 IEP.  Def.'s Opp'n at 5; A.R. Pt 1 at 8–9, 164–66.  At that meeting, Plaintiff and J.M.'s educational advocate, Dr. Ida Jean Holman, were able to convince DCPS to revise the 2012 IEP to include, among other things, full-time pull-out instruction.  A.R. Pt. 1 at 8, 164–73.  That revised IEP (the "2013 IEP") also provided that, in addition to full-time pull-out instruction, J.M. would continue to receive the behavioral support services prescribed by the 2012 IEP.  Def.'s Opp'n at 17–18.

J.M. attended Spingarn until he again ran into legal trouble and found himself re-incarcerated in March 2013, before DCPS could fully implement the January 2013 IEP.  Pl.'s Mot. at 4.  He re-enrolled at Spingarn upon his release at the beginning of the 2013–2014 school year but was incarcerated again almost immediately and did not re-enroll in school until December 11, 2013.  Def.'s Opp'n at 19–20.

All told, even while enrolled at Spingarn between periods of incarceration, J.M. rarely attended school, accumulating 36 total unexcused absences.  Def.'s Opp'n at 5.

    4.  *The 2014 Hearing Officer Determination*

On November 14, 2013, Plaintiff filed another administrative due process complaint with the DCPS Office of Dispute Resolution, which she amended on December 4, 2013, alleging that DCPS had failed to provide J.M. with a FAPE as required under the IDEA.  A.R. Pt. 1 at 224–40. Plaintiff's complaint challenged both the 2012 and 2013 IEPs, as well as J.M.'s school placement. Specifically, Plaintiff argued that DCPS had failed to: (1) adequately revise the 2012 IEP to reflect the terms of the 2012 HOD, (2) sufficiently accommodate J.M.'s behavioral and educational needs through either the 2012 IEP or 2013 IEP, (3) implement the 2013 IEP from January 31, 2013,

through "the present time," and (4) provide J.M. an appropriate school placement and location of services. *Id*. at 289–308.

An administrative due process hearing occurred on February 12, 2014. *Id*. at 5. Several witnesses testified at the hearing, including J.M.'s educational advocate, Dr. Holman, who testified that, in her opinion, the "ten hours of pull[-]out" that the 2012 IEP prescribed were insufficient and J.M. instead "needed [a] full-time out of general ed program." Admin. Rec. Pt. 2. ECF No. 11 [hereinafter A.R. Pt. 2], at 845–47, 849–50.

On February 25, 2014, the Hearing Officer issued her determination (the "2014 HOD")—the decision that is at issue in this case—finding that Plaintiff had "failed to meet her burden of proof on all of the issues presented" and, thus, rejecting all of Plaintiff's claims. A.R. Pt. 1 at 3, 17. The Hearing Officer found that: (1) the 2012 IEP adequately implemented the 2012 HOD because it provided small-group instruction within the general education setting, and, while the 2012 IEP did not *expressly* provide for a "therapeutic environment" or "at–risk counseling," it did prescribe sufficient behavioral and emotional development goals for J.M. to satisfy those requirements; (2) the 2012 IEP provided J.M. with a FAPE because it was consistent with the terms of the 2012 HOD[2]; (3) the January 2013 IEP also was appropriate for similar reasons; (4) DCPS did not fail to implement either the 2012 IEP or the 2013 IEP, and, additionally, J.M.'s excessive truancies and periods of incarceration made it effectively impossible to implement the required services; and (5) DCPS did not fail to provide an appropriate school placement. *Id*. at 10–15.

---

[2] The Hearing Officer further found that J.M.'s excessive truancy rendered it impossible for DCPS to effectively implement services or monitor his progress. *See id.* While J.M.'s truancy might be relevant to Plaintiff's claims regarding DCPS's failure to implement J.M.'s 2012 IEP, it is less clear what relevance, if any, those facts have to her claim that the 2012 IEP did not itself provide a FAPE. After all, the key inquiry as to the latter issue is "whether or not the defects *in the . . . IEP* are so significant that [d]efendant[] failed to offer [the student] a FAPE." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 70 (D.D.C. 2010) (emphasis added).

**B.     Procedural History**

On May 26, 2014, Plaintiff filed suit in this court asserting three claims of error in the Hearing Officer's decision. *See* Compl., ECF No. 1. She argues that the Hearing Officer erred in finding that: (1) the 2012 IEP adequately addressed J.M.'s needs and provided him with a FAPE, (2) Spingarn was an appropriate placement, and (3) DCPS properly implemented the 2013 IEP. *See id.* The parties filed cross-motions for summary judgment based solely on the administrative record. The court now turns to the parties' motions.

## III.     LEGAL STANDARD

**A.     Cross-Motions for Summary Judgment**

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id* at 323 (internal quotation marks omitted).

B.     Review of Administrative Decisions Under the IDEA

The Individuals with Disabilities Education Act ("IDEA") mandates that states, including the District of Columbia, that receive federal educational assistance must establish "policies and procedures to ensure," among other things, that a "free appropriate public education" is available to disabled children. 20 U.S.C. § 1412(a)(1)(A); *see also Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005). The statute was enacted "to ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). A FAPE requires that each child with a disability receive "special education and related services that" are "provided at public expense" and "in conformity with the [child's IEP]." *Id.* § 1401(9).

In the present action, Plaintiff seeks to overturn the decision of an administrative hearing officer. The IDEA permits "any party aggrieved by the findings and decision" rendered during administrative proceedings to "bring a civil action" in state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2). The reviewing court "shall receive the records of the administrative proceedings; shall hear additional evidence at the request of a party; and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The burden of proof rests on the party challenging the administrative determination. *See Reid*, 401 F.3d at 521 (D.C. Cir. 2005); *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 66 (D.D.C. 2010) (citing this standard).

That the reviewing court is required to base its decision "on the preponderance of the evidence" does not, however, authorize unfettered de novo review. *See Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982) ("[T]he provision that a reviewing court base its decision on the

8

'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."). Rather, when considering an appeal of a hearing officer's ruling, courts must give the administrative proceedings "due weight," *id*., and "[f]actual findings from the administrative proceedings are to be considered prima facie correct." *Roark ex rel. Roark v. District of Columbia*, 460 F. Supp. 2d 32, 38 (D.D.C. 2006) (quoting *S.H. v. State–Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003)).  At the same time, the IDEA also demands "less deference than is conventional in administrative proceedings," *Reid*, 401 F.3d at 521 (internal quotation marks omitted), because the district court is allowed to hear additional evidence at the request of a party. *See* 20 U.S.C. § 1415(i)(2)(C)(ii).  Lastly, when, as here, the parties introduce no additional evidence, a motion for summary judgment operates as a motion for judgment based on the administrative record.  20 U.S.C. § 1415(i)(2)(C)(iii); *District of Columbia v. Ramirez*, 377 F. Supp. 2d 63, 67 (D.D.C. 2005) (citing this standard).

**IV.   DISCUSSION**

As the factual recitation above shows, Plaintiff raised several arguments before the Hearing Officer during the 2014 administrative proceedings in support of her central contention that DCPS denied J.M. a FAPE.  As noted, Plaintiff in this case has pared her arguments down to three.  Pl.'s Mot. at 11.

First, Plaintiff contends J.M.'s 2012 IEP was insufficient under the IDEA because it "did not prescribe full-time specialized instruction of any kind[,] . . . the necessary 'therapeutic school[,]' . . . [or] a counselor [that would] always be available to work with [J.M.] whenever his behaviors interfered with his education." *Id*. at 10–11.  She argues that, as a result, the Hearing Officer committed reversible error because "the Hearing Officer does not appear to have addressed

the absence of small[-]group instruction outside of general education *in the IEP*." *Id*. at 11 (emphasis added). Plaintiff further clarifies in her Reply that she is not challenging the implementation of the 2012 HOD, Pl.'s Reply in Supp. of Mot. for Summ. J., ECF No. 18 [hereinafter Pl.'s Reply], at 4–5, but rather, asserting that the 2012 IEP failed to prescribe J.M. sufficient accommodations under the IDEA, irrespective of the requirements of the 2012 HOD.

Second, Plaintiff challenges DCPS's implementation of the 2013 IEP. The crux of her argument is that the Hearing Officer erred in rejecting her assertion that Spingarn simply could not provide the full-time pull-out instruction prescribed by the 2013 IEP due to resource limitations. *Id*. at 12–13. Plaintiff asserts that Spingarn was unable to implement the 2013 IEP because it "did not provide full-time specialized instruction to any student, in any setting, . . . [and thus J.M.] received only a small portion of his instruction outside of general education." *Id.* She also claims that Spingarn staff admitted as much during the 2013 IEP team meeting. *Id*. Plaintiff further argues that "only 2 of [J.M.'s] 10 teachers [while at Spingarn] had current special education certifications." *Id*.

Third, for the very same reasons just discussed, Plaintiff asserts that DCPS violated the IDEA because Spingarn was an inappropriate placement for implementation of the 2013 IEP. *Id*. at 13–14.

The court considers each of Plaintiff's three claims in turn.

### A. Whether the 2012 IEP Was Sufficient Under the IDEA

The IDEA provides that "a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education." 20 U.S.C. § 1415(f)(3)(E)(i); *see* 34 C.F.R. § 300.513(a)(1) ("[A] hearing officer's determination of whether a child received FAPE must be based on substantive grounds.").

Although "[a] court must give due weight to the [hearing officer's determination] and may not substitute its own notions of sound educational policy for those of the school authorities," it "may not simply rely on the Hearing Officer's exercise of discretion, for a decision without reasoned and specific findings deserves little deference." *Turner v. District of Columbia,* 952 F. Supp. 2d 31, 35–36 (D.D.C. 2013) (internal quotation marks omitted). And so, while a certain amount of deference should be accorded to the knowledge and expertise of the Hearing Officer, particularly in regards to her credibility determinations, *see R.D. ex rel. Kareem v. District of Columbia*, 374 F. Supp. 2d 84, 89–90 (D.D.C. 2005), courts do not need to defer to a decision that lacks reasoned and specific findings.

Applying the foregoing standards, the court finds that the Hearing Officer did not adequately address Plaintiff's contention that the 2012 IEP itself did not provide J.M. with a FAPE. Plaintiff repeatedly highlighted for the Hearing Officer that she was making two distinct claims related to the 2012 IEP: (1) that it did not adequately implement the requirements laid out in the 2012 HOD (i.e. her implementation claim), and (2) that it did not provide sufficient accommodations to meet the standards of the IDEA (i.e. her legal sufficiency claim). For instance, Plaintiff asserted in her due process complaint that the 2012 IEP was insufficient on its face because it failed to provide full-time pull-out instruction: "[R]egardless of whether the [Hearing Officer] finds a denial of FAPE from the failure of [DCPS] to comply with the [February 2012 HOD] . . . the IEP developed on February 22, 2012 is simply inappropriate for [J.M.]" because, among other reasons, "it fail[ed] to address or discuss the need for pull-out instruction in all classes." A.R. Pt. 1 at 297. Accordingly, Plaintiff marked a clear line of distinction in her complaint between her implementation and legal sufficiency claims.

At the hearing, Plaintiff presented testimony from Dr. Holman that specifically addressed and supported her legal sufficiency claim. A.R. Pt. 2 at 845–47, 849–50. Dr. Holman testified: "I reviewed the [2012 IEP] prior to going to the January meeting in 2013 . . . [and] I was concerned about . . . [the fact that] he had only ten hours of pull[-]out and one hour of counseling, I was concerned about that, because of the – how low his skill levels appeared . . . he needed a full-time out of general ed program that would deal with, in addition to his academics, but also his behaviors." *Id*. at 844–50. This portion of Dr. Holman's testimony clearly raises issue with the sufficiency of the accommodations prescribed by the 2012 IEP, separate and apart from the question whether that IEP sufficiently implemented the 2012 HOD.

Plaintiff again reinforced the distinction between her implementation and legal sufficiency claims in her closing argument:

> Even if somehow this [Hearing Officer] believes that DCPS somehow technically did comply with the [February 2012 HOD] . . . there is no way that the [February 2012 IEP] . . . could be seen as adequate or appropriate given the needs of the student at the time . . . [and there was] enough evidence of [J.M.'s] needs at the time . . . to prove, beyond a preponderance of the evidence, that the [February 2012 IEP was] . . . highly inappropriate for J.M. at the time, [and constituted] a denial of FAPE.

*Id*. at 550–51. In sum, both in her complaint and before the Hearing Officer, Plaintiff argued that, even if the 2012 HOD could be interpreted as allowing J.M.'s IEP to prescribe only small-group instruction within the general education setting and 10 hours of supplemental pull-out instruction, the Hearing Officer was still independently obligated under the IDEA to consider whether that resulting IEP actually provided J.M. a FAPE.

The Hearing Officer did not, however, satisfy her obligation to address Plaintiff's legal sufficiency claim concerning the 2012 IEP. *See e.g.*, *Alfono v. Dist. of Colum.*, 422 F. Supp. 2d 1, 7 (D.D.C. 2006) (remanding case because "plaintiff specifically objected to the . . . IEP . . . [and

12

the] Hearing Officer did not address [that] matter in his determination"). At the start of her decision, the Hearing Officer correctly identified as separate issues: (1) whether J.M. was denied a FAPE because "the February 2012 IEP did not comport with the HOD," A.R. Pt. 1 at 11, and (2) whether J.M. was denied a FAPE because DCPS "fail[ed] to develop an IEP . . . that was designed to meet J.M.'s educational needs," *id*. at 12. Having appropriately identified these distinct inquiries, the Hearing Officer, however, went on to treat them as one and the same. In her decision, the Hearing Officer provided a detailed explanation for her ruling that the 2012 IEP adequately implemented the 2012 HOD. Then, she summarily found that Plaintiff had "failed to meet her burden of proof" to show that the February 2012 IEP failed to provide a FAPE "for the reasons stated above." *Id*. at 12–13. However, the "reasons stated above" refer back to the Hearing Officer's explanation for rejecting Plaintiff's claim that DCPS had failed to implement the 2012 HOD. *Id*. at 11–12. The Hearing Officer, therefore, conflated the question whether DCPS had adequately implemented the 2012 HOD with the question whether the 2012 IEP itself provided J.M. a FAPE. That was error.

Because of the Hearing Officer's error, the 2014 HOD does not, for instance, address Dr. Holman's opinion that J.M. required full-time pull-out instruction in 2012. Nor does it discuss the findings of J.M.'s 2011 psychological evaluation, upon which Dr. Holman in part based her expert opinion. A.R. Pt. 2 at 851–52. The IDEA required the Hearing Officer to address such material testimony in evaluating the sufficiency of the 2012 IEP. *See M.O. v. District of Columbia*, 20 F. Supp. 3d 31, 40–41 (D.D.C. 2013) (vacating HOD where Hearing Officer failed to provide "sufficiently detailed reasoning" when dismissing expert opinion regarding the adequacy of challenged IEP). Her failure to do so requires this court to vacate that portion of her ruling and remand this matter for further proceedings. *See id*.; *Options Pub. Charter Sch. v. Howe ex rel.*

*A.H.*, 512 F. Supp. 2d 55, 57–58 (D.D.C. 2007) (remanding case where hearing officer made "no findings with respect to the basis upon which she credited . . . testimony" and "elsewhere . . . relie[d] upon speculation"); *see also Iowa v. FCC*, 218 F.3d 756, 760 (D.C. Cir. 2000) (remanding case for further consideration because the Commission failed to address the petitioner's argument). Accordingly, the court will remand this matter to the Hearing Officer for further proceedings to address whether, in light of the complete record, the 2012 IEP adequately addressed J.M.'s educational, emotional, and behavioral needs under the IDEA.

> **B.    Whether DCPS Failed to Implement the 2013 IEP and Failed to Provide an Appropriate Placement under the IDEA**

The court reaches a different conclusion regarding Plaintiff's two remaining claims. Those claims—whether DCPS failed to implement the 2013 IEP and whether Spingarn was an appropriate school placement—boil down to one essential question: Did Plaintiff carry her burden of proof that Spingarn did not, or could not, provide the services prescribed by the 2013 IEP? The court has carefully reviewed the record and concludes that Plaintiff failed to carry her burden.

First, Plaintiff failed to demonstrate that Spingarn *did not* in fact implement the 2013 IEP. She did not offer any evidence at the administrative hearing about the services that J.M. received—or did not receive—at Spingarn during the two-month period when that IEP was in effect (from January 31, 2013, when it was formulated, through March 2013, when J.M. was re-incarcerated). A.R. Pt. 1 at 15. The burden rested on her to do so. *See e.g.*, *Savoy v. District of Columbia*, 844 F. Supp. 2d 23, 32 (D.D.C. 2012).

Plaintiff also failed to demonstrate that Spingarn *could not* implement the 2013 IEP. As to that claim, Plaintiff did provide some evidence to support her position. Namely, she offered the testimony from her lawyer's paralegal, Chithalina Khanchalern, who was present at J.M.'s 2013 IEP meeting. According to Khanchalern, at that meeting, Plaintiff and DCPS "agreed to the full-

time IEP outside of gen ed" for J.M. A.R. Pt. 2 at 806. Then, according to Khanchalern, a Mr. Hudson, a representative from Spingarn, "said there was nothing—Mr. Hudson said he couldn't do anything about it. So it was kind of like, hint, hint, you might want to file a due process complaint now." *Id*. To corroborate Khanchalern's testimony, Plaintiff submitted Khanchalern's typewritten notes, which stated in pertinent part: "Hudson: doesn't feel like this is an appropriate placement." A.R. Pt. 1 at 166.[3] Dr. Holman, J.M.'s education advocate, also attended the meeting and testified as follows: "[Mr. Hudson] also knew that it was an inappropriate placement for him and he said this is not an appropriate placement for him . . . [h]e knew that he could not do the work, that he needed more help and he needed more—but he didn't go into great detail . . . [and when] [w]e asked about if they were going to change the schedule, and basically I think they said something to the effect they couldn't." *Id*. at 869–70. Dr. Holman's handwritten notes from the meeting did not, however, mention the exchange. A.R. Pt. 1 at 168–71.

The court finds that the Hearing Officer adequately considered the foregoing evidence and, consistent with her discretion, discounted it. *Id*. at 15. First, the Hearing Officer noted that, while Khanchalern's notes reflected that Hudson had expressed concern over whether Spingarn was an "appropriate" placement, they did not reflect an admission that Spingarn would not be able to provide full-time pull-out services if required by DCPS. Additionally, and perhaps more importantly, the Hearing Officer accorded less weight to Khanchalern's testimony and notes based on the fact that Dr. Holman's notes did not even mention Hudson's alleged admission. *Id* at 15. As there is nothing in the record to justify disturbing the Hearing Officer's credibility determination, *R.D. ex rel. Kareem*, 374 F. Supp. 2d at 89–90, the court finds no error in the 2014

---

[3] The parties disagree as to whether Khanchalern's typewritten notes were made contemporaneously to the 2013 IEP meeting or afterwards. *See* Def.'s Opp'n at 19; Pl.'s Reply at 11. The court cannot decide that dispute, however, as there is no record evidence as to when Khanchalern prepared her notes.

HOD concerning Plaintiff's final two claims. Accordingly, summary judgment will be granted in favor of Defendant as to those claims.

## V. CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment is denied, and the Defendant's Cross-Motion for Summary Judgment is granted in part and denied in part. This case is remanded to the Hearing Officer for further proceedings consistent with this Memorandum Opinion.

A separate Order accompanies this Memorandum Opinion.

November 9, 2016

Amit P. Mehta
United States District Judge